# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
      )
      )
      )    **Case No.: 2102003565**
v.      )
      )
**RASHA FLOWERS,**      )
      )
Defendant.      )

Submitted: May 23, 2022
Decided: June 6, 2022

## OPINION

*John W. Downs, Esquire, Deputy Attorney General*, Attorney General's Office, Wilmington, Delaware, *Attorney for the State of Delaware*.

*Michael W. Modica, Esquire,* Wilmington, Delaware, *Attorney for Defendant*.

**Jones, J.**

On July 6, 2021, the grand jury returned a one (1) count indictment against Rasha Flowers alleging that she, in violation of 11 *Del.C.* §1254A, did:

> With intent to prevent, hinder or delay the investigation of any crime or offence, specifically a felony homicide investigation, by a law enforcement officer or agency, did knowingly provide any false written or oral statement to Detective Christopher Phillips, a law enforcement officer or agency, which was material to the investigation.

The definition of "material" is defined in 11 *Del.C.* §1245(b)(3). "A statement is material when, regardless of its eventual use or admissibility in an official proceeding, it *could* have affected the course or outcome of the investigation of a crime or offense."[1]

Defendant has moved to dismiss the indictment claiming that the statute is unconstitutionally vague. Specifically, Defendant claims that the use of the term "could" within the statute is vague because there is no explanation provided as to what "could" affect an investigation.

A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that the contemplated behavior is forbidden or if it encourages arbitrary or erratic enforcement.[2] A two-step analysis is employed to determine if a statute is unconstitutionally vague. First, it must be determined whether the terms of a statute are sufficiently explicit to inform those subject to the statute of the

---

[1] 10 *Del. C.* §1245(b)(3) (emphasis added).
[2] *Hoover v. State*, 958 A.2d 816, 820 (Del. 2009); *State v. Baker*, 720 A.2d 1139, 1147 (Del. 1998).

prohibited conduct.[3] Second, the Court must consider whether the terms of the statute are so vague that persons of common intelligence must guess at the statute's meaning and would differ as to its applications.[4] The litigant must demonstrate that the statute under attack is vague as applied to her own conduct, regardless of its potentially vague application to others.[5] Therefore, Ms. Flowers must confine her argument to the facts and circumstances of this case.[6]

Enactments of the Delaware General Assembly are presumed to be constitutional.[7] The Court has a duty to read statutory language so as to avoid constitutional questionability and patent absurdity, and to give language its reasonable and suitable meaning.[8] Further, all reasonable doubts as to the validity of a law must be resolved in favor of the constitutionality of the legislation.[9]

Application of the above principles leads this Court to a conclusion that the statute at issue is not unconstitutionally vague.

The following information was set forth in the affidavit of probable cause for Providing A False Statement to Law Enforcement charge. On January 20, 2021, at approximately 12:32AM, officers from the New Castle County Police Department responded to the area of 31 Third Avenue, Overlook Colony in Claymont, Delaware, for a shooting. A 26-year-old woman had had been shot while a street fight was

---

[3] *Hoover*, 958 A.2d at 821; *State v. Baker*, 720 A.2d at 1147.
[4] *Id.*
[5] *In re Hanks,* 553 A.2d 1171, 1176 Del. 1989); *State v. Sailer*, 684 A.2d 1247, 1249 (Del. Super. 1995).
[6] *State v. Sailer*, 684 A.2d at 1249; *State v. General Chemical Corp.*, 559 A.2d 292, 295 (Del. Super. 1988).
[7] *Hoover v. State*, 958 A.2d at 821; *Snell v. Engineered Systems & Designs, Inc.,* 668 A.2d 13, 17 (Del. 1985).
[8] *Hoover v. State*, 958 A.2d at 821; *State v. Sailer*, 684 A.2d at 1250.
[9] *Hoover v. State*, 958 A.2d at 821; *McDade v. State*, 693 A.2d 1062, 1065 (Del. 1957).

going on. The affidavit states that a witness told officers that, before the shooting, a person known as "Rasha" parked a car in the middle of the street and then entered a house. The witness also said that "Rasha" went back to her car, that the witness heard people yelling in the street, that "Rasha" drove away, and that "Rasha" did not see the fight. The affidavit also notes that as more officers responded to the area at 12:52AM, twenty minutes after the 911 call, officers stopped two vehicles that were backing down Third Avenue – one vehicle was a Kia Optima, PA Registration LFP9961, driven by the Defendant, Rasha Flowers. The second vehicle contained Natasha Flowers, Rasha's sister, and Natasha's boyfriend, Jahmai Davis.[10]

That same night, Rasha Flowers was interviewed, while seated in her vehicle on Third Avenue, by Detective Chris Phillips of the New Castle County Police. Rasha Flowers told Det. Phillips that she did not know anything about the shooting. Rasha said that she was tracking her sister, via cell phone tracking, which brought her to the area. Rasha said that at the time she pulled up behind her sister's parked vehicle is when she saw the officers pull up. She indicated the officers arrived "like exactly the same time" as she did.

Area surveillance video from a residence on Third Avenue shows that on January 30, 2021 at approximately 12:15AM, 17-minutes before the shooting, a car pulled up on Third Avenue. The driver got out of the vehicle and entered a house. The driver was seen leaving the house at 12:25AM. The driver then pulled the

---

[10]Jahmai Davis and Natasha Flowers have both been indicted for the same offense as Rasha Flowers.

vehicle out of the view of the video surveillance. As noted, the shooting occurred at approximately 12:32AM. At 12:52AM, 20-minutes after the shooting, two cars are observed on surveillance video, backing down Third Avenue – away from the shooting scene. Those two vehicles were then stopped by the New Castle County police. In one vehicle was Rasha Flowers and in the other Natasha Flowers and Jahmai Davis.

Defendant claims that the statute is unconstitutionally vague because of the language "*could* affect an investigation." This Court disagrees. In the context of a potential witness to a criminal event, a person who is untruthful to a police officer about what they saw and/or heard is entirely aware that if they tell a lie, then their actions could affect the course or outcome of the criminal investigation. Common sense dictates that a person who is present at a crime, who decides to lie to law enforcement, does so because they are concerned that whatever they saw, heard or know could affect the investigation. Moreover, there is a "knowing" element to the statute which lends itself toward a constitutional interpretation.[11]

The Synopsis of the Bill enacting 11 *Del.C.* §1245 provides:

This Act provides an important tool for combatting obstruction of justice by those who would purposely make false statements to law-enforcement during criminal investigations …. Delaware law-enforcement officers and agencies regularly face witnesses who seek to prevent, hinder or delay criminal investigations by lying with impunity to those officers. This Act closes that gap by allowing for the

---

[11] *State v. Sailer*, 684 A.2d at 1250.

prosecution of one who intends to obstruct a criminal investigation by knowingly providing a false and material statement to law-enforcement. [12]

The synopsis and the plain language of the statute make it clear that a person cannot lie to an investigator of a crime and that, if they do, they are criminally liable for that lie. There is simply nothing vague about the meaning of the statute and the conduct prohibited.

Therefore, Defendant's Motion to Dismiss the Indictment is **DENIED**.

Defendant has also moved for a Bill of Particulars on two points. First, Defendant asks the Court to order the State to provide her with more specificity on which of her statements were false. The State points to the 13-minute recorded statement that the Defendant gave to Detective Phillips. This Court finds that this disclosure by the State is sufficient and will not order a further Bill of Particulars on this point.

Second, the Defendant asks this Court to order the State to provide her with more specificity on how her statements are material to the investigation. The State's response to this argument is that *any* false statement given by the Defendant to Detective Phillips could be material.

This Court finds that the indictment in this case fulfills the two-fold purpose of putting the Defendant on notice of what to defend against and provides a shield

---

[12] Del. S.B. 209 syn., 146 Gen. Assem. (2012).

against subsequent prosecutions for the same offense. [13] As explained above, the "lie" itself is what could effect the investigation. This Court is satisfied that the Defendant can prepare an adequate defense based on the information in the indictment and the discovery that has been provided to Defendant to determine whether her statements are material to the investigation.

Therefore, for the reasons set forth above, the Defendant's Motion For a Bill of Particulars is also **DENIED**.

**IT IS SO ORDERED**.

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

/jb
*Original filed with Prothonotary*

---

[13] *State v. Bittenbender*, 2001 WL 789663 (Del. Super. Jun. 25, 2001).